UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-497 (A) CAS | | | Date | December 7, 2009 |
|---|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | | |
| Interpreter | N/A | | | | |

| CATHERINE JEANG | LAURA ELIAS | DERIK FETTIG BEONG SOO-KIM |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| MARK TYRELL FOWLKES | X | X | | CHARLES PEREYRA-SUAREZ | | X | X |

Proceedings: **Defendant's Motion for New Trial and/or Motion for Judgment of Acquittal** (filed 11/16/09)

## I.    INTRODUCTION & BACKGROUND

On June 6, 2008, the government filed a superseding indictment charging defendant Mark Tyrell Fowlkes with one count of distribution of crack cocaine on September 3, 2006, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (count one); two counts of possession with intent to distribute crack cocaine on September 4, 2006 and September 13, 2006, pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B-C) (counts 2 and 5); one count of possession of a firearm in furtherance of a drug trafficking crime on September 4, 2006, pursuant to 18 U.S.C. §§ 924(c)(1)(A)(I) (count 3); and one count of possession of a firearm after a felony conviction on September 4, 2006, pursuant to 18 U.S.C. §§ 922(g)(1) (count 4).

On July 8, 2008, trial commenced on the superseding indictment. On July 10, 2008, defendant moved for a mistrial, which the Court granted over the government's objection. On November 4, 2008, defendant's retrial began. On November 6, 2008, the government introduced allegedly conflicting evidence concerning the handling of Exhibit 28, the cocaine allegedly obtained from defendant's person by the Long Beach Police Department ("LBPD") on September 13, 2006, and as such, the evidence relating to count five of the superseding indictment. According to the government, LBPD Officer Christopher Thue testified that Exhibit 28 had been secured in a safe in the narcotics section of the LBPD, prior to his giving it to Special Agent Jonathan Koeppen ("SA Koppen") of the Drug Enforcement Agency ("DEA")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

on September 20, 2006. Opp'n at 5 (citing Transcript 11/6/08: 69). Then, later that day, LBPD Detective Richard Miller testified at trial that he placed Exhibit 28 into the evidence locker at the LBPD station. Id. (citing Transcript 11/6/08: 182-83). At the conclusion of the testimony of Officer Thue and Detective Miller, the Court directed the government to investigate its trial testimony concerning the chain of custody of Exhibit 28. Before trial began on November 7, 2008, the LBPD delivered to government counsel a computer generated Property Chain of Custody Form for Exhibit 28, indicating that Exhibit 28 was maintained in the LBPD property department from September 14, 2006, to September 20, 2006. Opp'n at 6, Ex. A. The government produced the document to defense counsel (Bates No. 1742). When trial proceedings resumed that day, defendant requested a temporary continuance to investigate the late-produced evidence, and the Court ordered the trial adjourned.

On November 12, 2008, defendant filed a motion to dismiss the first superseding indictment based, in part, on the government's failure to provide defendant with copies of LBPD records regarding the handling of drug exhibits from September 13, 2006. On November 18, 2008, the Court denied defendant's motion to dismiss, finding that with regard to the chain of custody documents, there was no Brady[1] violation and the timing of the production was not "material" to the fairness of defendant's trial because he still had an opportunity to use the information at trial. Ct. Order Dated Nov. at 10 (Dkt. No. 202). The trial resumed on November 19, 2008, and on November 20, 2008, the jury found defendant guilty of one count of distribution of crack cocaine (count one) and two counts of possession with intent to distribute crack cocaine (counts two and five).[2]

On November 16, 2009, defendant filed the instant motion for a new trial and/or a motion for judgment of acquittal, arguing that "serious chain of custody issues" denied defendant a fair trial and claiming he had "ineffective assistance of counsel" at trial. On November 23, 2009, the government filed its opposition. Defendant filed his reply on November 30, 2009. The Court held a hearing on December 7, 2009. The Court finds and concludes as follows.

## II.   LEGAL STANDARD

### A.   Motion for Judgment of Acquittal Under Fed. R. Crim. P. 29

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

[2] The jury found defendant not guilty of possessing a firearm in furtherance of a drug trafficking crime (count three). The Court granted the government's motion to dismiss the felon in possession charge (count four), and denied defendant's motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Under Rule 29, a judgment of acquittal is warranted if the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). "The evidence is sufficient to support a conviction if, 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Magallon-Jimenez, 219 F.3d 1109, 1112 (9th Cir. 2000) (citing Jackson v. Virginia, 443 U.S. 307, 319(1979)). Further, "all reasonable inferences are to be drawn in favor of the government, and any conflicts in the evidence are to be resolved in favor of the jury's verdict." United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201-02 (9th Cir. 2000).

  **B.** **Motion for a New Trial Under Fed. R. Crim. P. 33**

Fed. R. Crim. P. 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for a new trial is "directed to the discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir.1981).

**III.** **DISCUSSION**

  **A.** **Chain of Custody**

Defendant moves for a judgment of acquittal and/or for a new trial on the grounds that errors in the chain of custody of evidence in this case "are so egregious that they implicate denial of a fair trial." Mot. at 2. Defendant's motions are based primarily on the results of a post-trial investigation conducted by his expert witness S. Robert Radus ("Radus"). On July 8, 2009, the Court ordered that defendant's forensic computer expert Radus, in coordination with representatives of Long Beach Police Department ("LBPD") and a special agent from the Drug Enforcement Administration "shall be given access to conduct a preliminary analysis of the database used by the LBPD Property Department to generate the Property Chain of Custody Form produced by the government at Bates No. 1742 to determine how the Property Chain of Custody Form was generated." Ct. Order (Dkt. No. 251). Pursuant to this order, Radus planned to conduct a two-phase investigation. Radus Decl. Filed Nov. 16, 2009, ("Radus Decl. No. 2) at 3. Phase one was to determine if there were "other undisclosed persons who had information which had not been gathered or fully developed in the two initial trials" pertaining to the chain of custody of Exhibit 28. Id. at 4. Phase two was to determine whether data generated by the LBPD's property record system and stored in an Oracle database could be altered directly. Id.

As part of his investigation, on July 28, 2009, Radus observed a live demonstration of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

LBPD Property Records System ("PRS"), interviewed individuals who work in the LBPD Property division, and obtained written answers to his questions from the database's vendor Tiburon, Inc. ("Tiburon"). Radus Decl. Filed Nov. 16, 2009, at 4. According to Radus, PRS is how LBPD refers to the Tiburon Records Management System and Evidence Module ("RMS") used by LBPD, the Oracle Database, the IBM AIX operating system, and the IBM computer hardware. Id. at 3. In addition, he asserts that RMS uses the Oracle Database as the data repository. Id. at 9. Between July and October of 2009, Radus reviewed the case file and information gathered during the initial interviews. Id. Then, on November 4 and 6, 2009, he conducted additional interviews with Jonathan Stafford, the LBPD Records and Technology Administrator ("Stafford"), and he interviewed Grace Chao and Karen Li, the two Oracle database administrators for the City of Long Beach. Id. at 10.

Based on his investigation, thus far, Radus asserts that the "chain of custody for both the physical evidence and the PRS used by LBPD are so deficient in their tracking and auditing capabilities as to warrant a new trial and/or dismissal."[3] Id. at 13. Regarding the tracking of physical evidence, Radus asserts that "there is consistently no proof in the chain of custody who had physical control of the evidence at every point it was touched." Id. He contends that this is caused by the fact that "[t]here is only a data entry record of the date, time, and identification of the data entry operator who recorded an event, not the event itself." Id. at 16. Specifically, as to Exhibit 28, Radus asserts that there is no annotation on the Chain of Custody Form as to which evidence locker it was placed after it was allegedly obtained from the defendant's person on September 13, 2006. Id. at 6-7. He further asserts that a significant amount of time elapsed between the time of collection and when this event was first recorded in RMS.[4] Id. at 14. Also, Radus asserts that there is no chain of custody trail, in RMS, of who deposited, received, or transferred the evidence while it was in LBPD's custody.[5] Id. at 7-9, 14. According to Radus, other than the person who tested the drug evidence, there is no tracking of who controlled the evidence for the five days it was in the Crime Lab from September 14, 2006, to September 19,

---

[3] Radus further asserts that "[i]n my 31 years of experience as a Reserve Deputy Sheriff, Level I, for the County of Orange, California, I have never seen such a lack fo control and continuity in the traceability of physical evidence as in this case." Radus Decl. at 13.

[4] Specifically, he asserts that although Fowlkes was taken into custody on September 13, 2006 around 1:00 PM, at which time the evidence was presumably collected, the evidence information was first entered into the PRS on September 14, 2006 at 7:55 AM. Id. at 7.

[5] According to Radus, he requested interviews at LBPD of persons involved in the transportation, booking, search and collection of evidence from the defendant's person, but LBPD denied him access to interview these people. Id. at 6-7.

2006.  Id. at 8-9, 14.  Thus, Radus contends that there is no irrefutable proof, by chain of custody, that the drug evidence allegedly collected from defendant's person was actually the evidence tested by the Crime Lab.  Id. at 14.  As to the photograph of the evidence, Radus asserts that there is personal marking on the evidence by the person who collected the evidence on September 13, 2006, and no record of the time or identify of the person who took the photos.  Id. at 14-15.

Regarding the PRS, Radus asserts that although he observed that LBPD Property Division personnel do not "appear able to make changes to data record entries via RMS, once the entry is 'posted' to PRS," the date and time entered into the PRS is the data entry time and not the actual collection date and time.[6]  Id. at 5.  Thus, according to Radus, "[t]his procedure makes it possible to insert data and evidence at any time."  Id.  Moreover, he asserts that Tiburon representatives told him that "an LBPD employee with read/write access directly into the Database can alter the data" but that this type of access "is strictly controlled through a secure username/password controlled LBPD."  Id. at 6.  While Stafford told Radus that no one at LBPD has access to enter the Oracle database in any capacity, Radus asserts that he learned that the Oracle database is maintained by the City of Long Beach Technical Services Division, and not LBPD.  Id.  According to Radus, "it seems unlikely that LBPD would not have access to the Oracle database" for two reasons.  Id. at 12.  Radus contends first, that it is unrealistic for LBPD not to have access to their own data; and second, if that were the case, it would mean that a private company, Tiburon, is the only entity to be able to access the database.  Id.  In the course of the investigation, Radus requested to analyze the "hard drive" containing the Oracle databased used by the RMS but he was denied the request.  Id. at 11.  However, Radus asserts that he was informed that LBPD has opted to not use the "audit trail" feature with the RMS, which would normally verify data entry, changes and modifications.  Id.  at 12.  According to Radus, "[i]f the audit trail was turned off during the time of the Fowlkes case, then there is no way to confirm the integrity of the data in the Oracle database."  Id. 12-13.

The government responds that defendant's motion for a judgment of acquittal based on evidence handling should be denied because there was ample evidence supporting his convictions at trial.  Opp'n at 10-14.  As to count one, the government's evidence included an intercepted telephone call on September 2, 2006, in which defendant allegedly set up a drug deal at a gas station in Long Beach; eyewitness testimony, corroborated by surveillance photographs, describing the hand-to-hand drug transaction with Shawn Lee; Officer Thue's testimony that he collected the crack cocaine, Exhibit 25, and gave it to SA Koeppen; SA

---

[6] Radus asserts that "posted" "means the data entry operator has entered the data using the RMS interface and a supervisor has approved and finalized the entry." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Koeppen's testimony that he received Exhibit 25; and testimony by the DEA chemist that Exhibit 25 contained .61 grams of crack cocaine.[7] Id. at 2-3, 12. As to count two, the government's evidence included four intercepted telephone calls from September 4, 2006, in which defendant expressed concern about the police being near his apartment and his desire to make sure everything was "clean;" testimony regarding items seized during a search of defendant's home, including 2.6 grams of crack cocaine, Exhibit 26; testimony by Officer Thue that he gave Exhibit 26 to SA Koeppen, who testified that he sent it to the DEA Southwest Laboratory; and testimony by the DEA chemist that Exhibit 26 contained 2.6 grams of crack cocaine.[8] Id. at 3-4, 13. Finally, as to count five, the government's evidence included eyewitness testimony describing defendant selling drugs from his car on September 13, 2006; testimony by Sergeant Jerry Gibbs that after defendant's arrest, during a strip search, he was able to recover crack cocaine hidden on defendant's person, Exhibit 28, after using a taser on defendant; a photograph of Exhibit 28 taken by Sergeant Gibbs, Exhibit 22; testimony by Officer Jeff Harris corroborating that he saw Sergeant Gibbs recover the drug evidence from defendant's person; testimony by Officer Thue that he gave Exhibit 28 to SA Koeppen on September 20, 2006; testimony by SA Koeppen that he received Exhibit 28 and sent it to the DEA lab for analysis; and testimony by the DEA chemist that Exhibit 28 contained 5.6 grams of crack cocaine. Id. at 4-5; 13.

The government further argues that defendant's claims regarding gaps in the chain of custody for Exhibit 28 should be rejected because the government properly authenticated the evidence at trial.[9] Id. at 14. It contends that the government need not establish a complete chain of custody in order to admit drug evidence at trial. Id. at 15 (citing Reyes v. United States, 383 F.3d 734 (9th Cir. 1967)). Rather, the government argues that any gaps in the chain of custody

---

[7] According to the government, to sustain a conviction for distribution of cocaine (count one), the government was required to prove that (1) defendant knowingly delivered cocaine base in the form of crack cocaine in a measurable or detectable amount; and (2) defendant knew that it was cocaine base in the form of crack cocaine or some other prohibited drug. Id. at 11-12 (citing Ninth Circuit Model Criminal Jury Instruction, No. 9.15 (2003)).

[8] To sustain a conviction for possession with intent to distribute cocaine (counts two and five), the government must prove that the defendant (1) knowingly, (2) possessed the cocaine, (3) with intent to distribute it. See 21 U.S.C. § 841(a)(1); United States v. Mora, 876 F.2d 76, 77 (9th Cir. 1989).

[9] It contends that it is only required to make a prima facie showing of authenticity "so that a reasonable juror could find in favor of authenticity or identification." Id. (citing Fed. R. Evid. 901(a); United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991).

go to the "weight of the evidence rather than admissibility." Id. (quoting United States v. Abreu, 952 F.2d 1458, 1467 (1st Cir. 1992)). It further argues that in the absence of evidence of tampering, there is a presumption that public officers have properly discharged their official duties. Id. (citing United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991)). Moreover, the government contends that this Court heard extensive argument from defense counsel during trial in support of defendant's attempt to exclude the drug evidence for lack of foundation, and that this Court did not abuse its discretion in admitting the evidence at trial. Id. at 15-16 (citing Transcript 11/6/08: 238, in which the Court found that defendant's arguments went to the probative weight of the evidence). The government further argues that defense counsel raised these same property maintenance issues at trial, and based on the jury's guilty verdict, they rejected these arguments. Id. at 16-17 (citing Transcript 11/6/08: 68-69, 189-190; 11/20/08: 52-53, 54-55).

As to defendant's motion for a new trial, the government contends that defendant has not met his burden to show that the evidence at trial preponderates heavily against the jury's guilty verdicts. Id. at 18. Furthermore, it argues that defendant's claims do not constitute newly discovered evidence to warrant a new trial under Rule 33 because the jury rejected identical claims at trial.[10] Id. at 19. Regarding the PRS, the government contends that defendant only raises speculative grounds to challenge the authenticity of the Chain of Custody Form for Exhibit 28 and does not present newly discovered evidence.[11] Id. at 20-21.

Defendant replies that the jury at the second trial was not apprised of the inability of defense counsel's to conduct the request "hard drive" analysis. Reply at 4. He further argues that the jury did not have the benefit of Radus' expert opinion regarding the import of the serious deficiencies in the chain of custody in this case. Reply at 4.

The Court finds that defendant has not met his burden under Rule 29 or Rule 33 to demonstrate that a judgment of acquittal or new trial is warranted. Defendant does not point to any evidence of tampering or unauthorized access to the evidence in this case, and thus, the

---

[10] To prevail on a Rule 33 motion based on newly discovered evidence, defendant must demonstrate that: (1) the evidence is newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in an acquittal. United States v. Harrington, 410 F.3d 598, 601 (9th Cir. 2005).

[11] The government asserts that this form was never before the jury. Id. at 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Court finds that a reasonable juror could find that the drug evidence submitted at trial, including Exhibit 28, was in "substantially the same condition" as when it was seized from defendant. See Gallego v. United States, 276 F.2d 914, 917 (9th Cir.1960); see also Harrington, 923 F.2d at 1374 ("The district court may admit the evidence if there is a 'reasonable probability the article has not been changed in important respects.'"). Accordingly, the Court concludes that there is no basis for excluding the drug exhibits. As the Court noted at trial, defendant's claims regarding gaps in the chain of custody for drug evidence in the case implicate the probative weight of the evidence. See, e.g., Abreu, 952 F.2d at 1467; Harrington, 923 F.2d at 1374 ("[T]he mere possibility of a break in the chain of custody 'goes only to the weight of the evidence.'"). The Court finds that based on the evidence submitted at trial, a rational trier of fact could find the essential elements of count one, distribution of crack cocaine, and counts two and five, possession with intent to distribute, beyond a reasonable doubt. See United States v. Harris, 371 F.2d 365, 366 (9th Cir. 1967) (finding the fact that narcotics were left for a time in the government chemist's locked automobile did not render adequacy of government's proof of chain of custody of narcotics offered in evidence so inadequate as to warrant reversal of jury conviction). Thus, the Court concludes that the evidence is sufficient to support the jury's conviction, and clearly does not preponderate heavily against the verdict.

### B.    Ineffective Assistance of Counsel

Defendant argues that the inability of defense counsel to conduct a thorough investigation of the chain of custody issues at the second trial, as well as the failure of his trial counsel to object, pursuant to 18 U.S.C. § 3161(d)(1), to the government's delay of more than one year in filing a superseding indictment, constitute ineffective assistance of counsel that warrant granting his motions for a judgment of acquittal and/or a new trial. Mot. at 2; Reply at 5. He asks the Court to consider again his previously submitted declaration of June 2, 2009, regarding his ineffective assistance of counsel claims. Reply at 5; Ex.2. Finally, he asks the Court to address his ineffective assistance of counsel claims on direct review rather than on collateral attack. Id.

As a threshold matter, the government responds that claims of ineffective assistance of counsel should generally be raised by collateral attack in a motion pursuant to 28 U.S.C. § 2255. Opp'n at 22 (citing United States v. Molina, 934 F.2d 1440, 1446 (9th Cir. 1991) (finding that a court may "address the merits of an ineffective assistance of counsel claim on direct appeal if 'the record is sufficiently complete.'")). Should the Court reach the merits of his claims, the government contends that defendant has failed to satisfy his burden to show that the strategic decisions made by his trial attorneys constituted deficient performance or that he suffered any resulting prejudice. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

    The Court finds defendant's ineffective assistance of counsel claims more appropriately raised by collateral attack under 28 U.S.C. § 2255.  See Molina, 934 F.2d at 1146; United States v. Reward, 889 F.2d 836, 859 (9th Cir. 1989).  Thus, the Court declines to address the merits of defendant's claims in the instant motion.

**IV.   CONCLUSION**

    The Court DENIES defendant's motions for a judgment of acquittal and/or a new trial.  The Court resets defendant's Sentencing on **March 8, 2010** at **2:00 p.m.**

    IT IS SO ORDERED.

|  | 00 | : | 24 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |

cc:   U.S. Probation