UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-497(A) CAS | Date | May 24, 2010 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| CATHERINE JEANG | LAURA ELIAS | DERIK FETTIG |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Mark Tyrell Fowlkes, Pro Se | | X | X | Paul Horgan, Standby Counsel | | X | X |

Proceedings: **DEFENDANT'S MOTION HEARING TO DISMISS FOR EVIDENCE TAMPERING** (filed 04/12/10)

**DEFENDANT'S MOTION RE: HARD DRIVES AND RELATED ISSUES** (filed 04/12/10)

## I.   INTRODUCTION & BACKGROUND

On June 6, 2008, the government filed a superseding indictment charging defendant Mark Tyrell Fowlkes with one count of distribution of crack cocaine on September 3, 2006, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (count one); two counts of possession with intent to distribute crack cocaine on September 4, 2006 and September 13, 2006, pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B-C) (counts 2 and 5); one count of possession of a firearm in furtherance of a drug trafficking crime on September 4, 2006, pursuant to 18 U.S.C. §§ 924(c)(1)(A)(I) (count 3); and one count of possession of a firearm after a felony conviction on September 4, 2006, pursuant to 18 U.S.C. §§ 922(g)(1) (count 4).

On July 8, 2008, trial commenced on the superseding indictment. On July 10, 2008, defendant moved for a mistrial, which the Court granted over the government's objection. On November 4, 2008, defendant's retrial began. On November 6, 2008, the government introduced allegedly conflicting evidence concerning the handling of trial Exhibit 28, the crack cocaine allegedly obtained from defendant's person by the Long Beach Police Department ("LBPD") on September 13, 2006, which is the subject of count five of the superseding indictment. LBPD Officer Christopher Thue testified that Exhibit 28 had been secured in a safe

in the narcotics section of the LBPD, prior to his giving it to Special Agent Jonathan Koeppen ("SA Koeppen") of the Drug Enforcement Agency ("DEA") on September 20, 2006. See Transcript 11/6/08: 69. Later that day, LBPD Detective Richard Miller testified that he placed Exhibit 28 into the evidence locker at the LBPD station. See id. at 182-83. At the conclusion of the testimony of Officer Thue and Detective Miller, the Court directed the government to investigate the chain of custody of Exhibit 28. Before trial began on November 7, 2008, the LBPD delivered to government counsel a computer generated Property Chain of Custody Form for Exhibit 28, indicating that it was maintained in the LBPD property department from September 14, 2006, to September 20, 2006. The government produced the document to defense counsel (Bates No. 1742). When trial proceedings resumed that day, defendant requested a continuance to investigate the late-produced evidence, and the Court ordered the trial adjourned.

On November 12, 2008, defendant filed a motion to dismiss the first superseding indictment based, in part, on the government's failure to provide defendant with copies of LBPD records regarding the handling of drug exhibits from September 13, 2006. On November 18, 2008, the Court denied defendant's motion to dismiss, finding that with regard to the chain of custody documents, there was no Brady[1] violation and the timing of the production was not "material" to the fairness of defendant's trial because he still had an opportunity to use the information to cross-examine the government's witnesses at trial.[2] Ct. Order at 10 (Dkt. No. 202). The trial resumed on November 19, 2008, and on November 20, 2008, the jury found defendant guilty of one count of distribution of crack cocaine (count one) and two counts of possession with intent to distribute crack cocaine (counts two and five).[3]

On December 7, 2009, the Court denied defendant's motion for new trial and/or motion for judgment of acquittal, finding that defendant did not point to any evidence of tampering or

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

[2] In so far as the Property Chain of Custody Form for Exhibit 28 corroborates Detective Miller's testimony that he checked Exhibit 28 into an evidence locker and contradicts Officer Thue's testimony that he placed Exhibited 28 into a safe, the Court noted that defendant is "free to recall [these] witnesses to impeach them using this newly discovered evidence." Ct. Order Dated Nov. 20, 2008 at 10 (Dkt. No. 202).

[3] The jury found defendant not guilty of possessing a firearm in furtherance of a drug trafficking crime (count three). The Court granted the government's motion to dismiss the felon in possession charge (count four), and denied defendant's motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

unauthorized access to the evidence in this case, and thus, a reasonable juror could find that the drug evidence submitted at trial, including Exhibit 28, was in "substantially the same condition" as when it was seized from defendant. Further, as the Court noted at trial, defendant's claims regarding gaps in the chain of custody for drug evidence in the case implicate the probative weight of the evidence and the Court found that based on the evidence submitted at trial, a rational trier of fact could find the essential elements of count one, distribution of crack cocaine, and counts two and five, possession with intent to distribute, beyond a reasonable doubt. Thus, the Court concluded that the evidence is sufficient to support the jury's conviction, and clearly does not preponderate heavily against the verdict.

On April 12, 2010, defendant filed the instant motions to dismiss the indictment based upon a claim of evidence tampering of Exhibit 28 and for an order directing the government to produce the hard drive of the Long Beach Police Department so that it can be examined by defendant's expert Robert Radus to establish evidence mishandling. On April 22, 2010, the government filed its opposition. Defendant filed his reply on May 5, 2010. The Court held a hearing on May 24, 2010. The Court finds and concludes as follows.

## II.    LEGAL STANDARD

"A district court may dismiss and indictment on the grounds of outrageous conduct if the conduct amounts to a due process violation." United States v. Barrera-Moreno, 951 F.3d 1089, 1091 (9th Cir. 1991) (citing United States v. Simpson, 813 F.2d 1462, 1464-65 (9th Cir. 1987) (Simpson I)). "If the conduct does not rise the level of a due process violation, the court may nonetheless dismiss under its supervisory powers," which may be exercised for three reasons: "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." Baerrera-Moreno, 951 F.2d at 1091 (citing United States v. Simpson, 927 F.3d 1088, 1090 (9th Cir. 1991) (Simpson II)).

Dismissal of an indictment is proper only if the improper governmental conduct is "so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Garza-Juarez, 992 F.2d 896, 904 (9th Cir. 1993) (quoting United States v. Ramirez, 710 F.2d 535, 539 (9th Cir. 1983)). This is an "extremely high standard," and as such, motions to dismiss for government misconduct are rarely granted. Garza -Juarez, 992 F.2d at 904; see United States v. Montilla, 870 F.2d 549 (9th Cir. 1989); United States v. Pembertson, 853 F.2d 730, 735 (9th Cir. 1988) (per curiam) (noting that the due process defense has only been successfully used to dismiss an indictment once in the Ninth Circuit). Furthermore, accidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior. U.S. v. Chapman, 524 F.3d 1073, 1085 (9th Cir. 2008). In considering the motion to dismiss, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

court must also determine whether there was "substantial prejudice." United States v. Kearns, 5 F.3d 1251, 1253-54 (9th Cir. 1993).

### III.  DISCUSSION

Defendant argues that the Court should dismiss the indictment based on a claim of evidence tampering of Exhibit 28. In support of this argument, he contends that evidence submitted at trial indicates a discrepancy in gross weight of Exhibit 28, as measured by the case agent and then later by the DEA lab. Specifically, defendant asserts that Bates No. 477, the DEA's Report of Drug Property Collected, Purchased, or Seized (the "DEA Report"), indicates that Exhibit No. 12, the crack cocaine allegedly obtained from defendant's person and submitted at trial as Exhibit 28, initially had a gross weight of 32 grams when it was first weighed by the case agent on September 20, 2006, but then later had a gross weight of 33.5 grams when the DEA chemist weighed it on October 17, 2006. Mot. at 5; Ex. D. Accordingly, he asserts that there is an unexplained 1.5 gram weight gain to Exhibit No. 12. Id. Defendant argues that the other two exhibits, Exhibit Nos. 13 and 14, the marijuana and cocaine allegedly seized from defendant that same day, did not increase in weight and thus the weight discrepancy cannot be explained by the use of an evidence sticker, which was used on all exhibits, or by the use of a different scale at the DEA lab, given that all the exhibits were weighed on this scale. Id. Instead, defendant contends that the increase in weight of Exhibit 28, in combination with facts showing that the government mishandled the evidence, can only be explained by the theory that the LBPD tampered with the evidence before it was weighed by the DEA. Id. at 5-10. Accordingly, he argues that the Court has the discretion to not admit the evidence, and thus dismiss the indictment. Id. at 11.

In his motion regarding hard drives and related issues, defendant reiterates his previous argument raised in his motion for a new trial, that the LBPD has denied his expert Robert Radus adequate access to the computer hard drive relating to the evidence in his case, such that he cannot investigate the claim of evidence mishandling and conduct a hard drive analysis. Mot. at 6. Further, he reiterates his argument, raised in his motion to dismiss filed November 12, 2008, that the destruction of the LBPD evidence envelop by Agent Koeppen destroys a very important part of the chain of custody. Id. at 5. Defendant argues that gaps in the chain of custody of Exhibit 28 indicate that the LBPD had the opportunity to tamper with the evidence, specifically in the time between October 11-17, 2006, the week before the exhibit was transferred to the DEA lab. Moreover, defendant alleges that the exhibit never even went to the LBPD property department. Id. at 4.

The government responds that defendant does not provide a basis for this Court's exercise of its supervisory powers to grant a new trial or dismiss the indictment. Opp'n at 1. It

argues that the small discrepancy in gross weight of Exhibit 28, as measured by the case agent and the DEA lab, is not evidence of tampering in this case, and that defendant's speculation that someone added crack cocaine to Exhibit 28 at the DEA lab does not merit reversal of his convictions. Id. (citing United States v. Anguloa, 598 F.2d 1182, 1186 (9th Cir. 1979) (rejecting a claim of evidence tampering based on defendant's "unsupported speculation" and upholding admission of evidence)).

The evidence at trial regarding the gross weight of Exhibit 28 was as follows:

SA Koeppen testified that he weighed Trial Exhibit 28 before sending it to the DEA lab, and that the drug exhibit weighed 32 grams. See Transcript 11/19/08: 100-01. SA Koeppen also testified that he did not know when the scale that he used had last been checked for accuracy or "if it was ever calibrated." Id. at 101, 102.

Dean Kirby ("Kirby"), the DEA chemist, testified that when he received Exhibit 28, it was packaged in a sealed DEA evidence envelope. Id. at 61, 91. Kirby explained that, in general, he compares the physical description of the evidence on the submitting agent's report to make sure that it matches the drug exhibit at the lab. Id. He then takes the gross weight of the drug exhibit and compares that to the agent's report to make sure that it matches the report from the submitting agent. Id. Kirby explained that the gross weight "would reflect the entire weight of the envelop, the wrappings, and drugs." Id. at 61, 78. As to the scales at the DEA lab, Kirby testified that they are calibrated by the manufacturers on a yearly basis and are tested for accuracy on a monthly basis by lab personnel. Id. at 62-63. The gross weight of Exhibit 28 was 33.5 grams on October 17, 2006, when Kirby weighed it at the DEA lab. Id. at 78-79. He explained that the weight of a drug exhibit taken by him and the weight taken by the submitting agent is "[a]lmost always going to be a little different. They're using a different scale from me, different time, and again, this has been—already had an extra evidence sticker put on it which is gonna add weight to it." Id. at 91-92. According to Kirby, the physical appearance and gross weight of Exhibit 28, and the other drug exhibits, were sufficiently consistent with SA Koeppen's report such that he proceeded to conduct the chemical analysis of the exhibits. Id. at 61-62.

As to the chemical analysis and net weight of Exhibit 28, Kirby testified that in the course of his chemical analysis of the exhibit and the other crack cocaine exhibits, he took the "chunky, rocky powdery kind of substance" and ground it up to "make it homogenous so I can do analysis that would represent the—the entire exhibit." Id. at 60, 62. The results of Kirby's chemical analysis of Exhibit 28 indicated that it was 79 percent cocaine base and that it was consistent with substances known as crack. Id. at 68-69. He testified that the net weight "is just the drug" and that the net weight on October 17, 2006 was 5.6 grams of crack cocaine. Id. at

61, 85-86.  After he performed the chemical analysis of the exhibit, Kirby testified that there were 5.3 grams remaining.  Id. at 93.  He explained that he destroys some of the drug exhibit during the course of his chemical analysis.  Id. at 60.  Kirby also testified that a chemist hired by defendant weighed Exhibit 28 one to two years later and determined that it weighed 5.1 grams.  Id. at 73-74, 86-87.  He explained that a drug exhibit containing crack cocaine would lose net weight over time for two reasons: (1) a portion of the drug exhibit was destroyed during the course of the chemical analysis; and (2) water in the crack cocaine would evaporate over time.  Id. at 60, 65-66, 71-74.

     Given the fact that the government disclosed the DEA Report that contained the small discrepancy regarding the gross weight of Exhibit 28 at the outset of defendant's case, the government argues that defendant fails to establish any outrageous government conduct that rises to the level of a due process violation to justify reversal of his convictions and dismissal with regard to the gross weight of Exhibit 28.  Opp'n at 9-10.  Further, they argue that defendant's allegations implicate the DEA lab only and plaintiff does not point to any evidence in the record to support his speculation that someone added crack cocaine to Exhibit 28 at the DEA lab.  Id. at 10.  The government argues that, to the contrary, the evidence demonstrates that the evidence was not mishandled by any personnel at the DEA lab.  Id. at 10-11.  In addition, it contends that because defendant had the full benefit of knowing of the alleged discrepancy in the gross weight of Exhibit 28—as evidenced by the fact that defendant's trial counsel questioned SA Koeppen about the discrepancy—there is no basis for the Court to exercise its supervisory powers to protect judicial integrity by ensuring defendant's conviction rests on appropriate considerations that were validly before the jury.  Id. at 12-13.  The government argues that based on the record, the jury was able to consider the gross weight of Exhibit 28 in reaching its verdict or disregard the admitted exhibit all together if the jurors felt the exhibit had been altered.  Id. at 13 (citing Gallego v. United States, 276 F.3d 914, 917 (9th Cir. 1960)).  In so far as defendant argues that the process by which the DEA chemist analyzed the crack cocaine is indicative of evidence tampering, the government responds that there is no evidence in the record that Kirby did not follow regular procedures in analyzing the exhibits.  Id. at 13-14.  In any event, the government argues that defendant's claims do not obscure the fact that the uncontradicted evidence at trial indicated that the operative net weight, which reflects the amount of crack cocaine, of Exhibit 28 was always more than five grams, as charged in count five.  Id. at 14-16.

     As to defendant's argument that there is a lack of documentation from the LBPD regarding whether Exhibit 28 was sent to the LBPD lab before it was transferred to DEA, the government responds that this claims is unfounded because the government provided defendant with a computer print-out that corroborates the information in the Property Chain of Custody Form (Bates No. 1742).  Id. at 16.  Further, the government contends that the Court should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

decline to reconsider its decision denying defendant's request that the LBPD produce a "hard drive" for analysis and further investigation. Id. at 17-19.

In so far as defendant seeks reconsideration of this Court's December 7, 2009 order denying his motion for new trial, which was based on the same alleged evidence handling and chain of custody issues as presented here, the government argues that defendant has not met his burden to show that this Court abused its discretion in denying the motion. Id. at 19-22 (citing United States v. Blinder, 10 F.3d 1468, 1476 (9th Cir. 1993)). Moreover, the government argues that defendant's claims do not constitute newly discovered evidence to warrant a new trial under Fed. R. Crim. P. 33.[4] Id. at 22-24. Specifically, it contends that defendant's photographs of drug evidence, taken by an investigator hired by the Federal Public Defender's Office, are not "newly discovered" evidence because they were available to defendant's counsel well before trial. Id. at 23. Moreover, it argues that the photographs are cumulative of defendant's arguments at trial regarding the discrepancy in gross weight of Exhibit 28, and are not material to the controlling issue of count five, which is the net weight of the crack cocaine possessed by defendant. Id. For all these reasons, the government argues that motions should be denied. Id. at 24.

Defendant responds that the government cannot say that Exhibit 28 always had a net weight over 5 grams because the net weight measurements were taken after the 1.5 gram weight gain was allegedly added to the gross weight. Reply at 2. As to the government's argument that the fact that the case agent and DEA chemist used different scales may explain the discrepancy, defendant argues that this claim is flawed because the other drug exhibits, Exhibit Nos. 13 and 14, do not reflect similar weight gains but their weights remained effectively the same. Id. at 3. Further, defendant argues that the government's reliance on Anguloa is misplaced because that case involved a weight loss and not a weight gain. Id. at 6.

---

[4] Fed. R. Crim. P. 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for a new trial is "directed to the discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981). A defendant must satisfy the following five part test to prevail on a Rule 33 motion based on newly discovered evidence: "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative not merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." United States v. Harrington, 410 F.3d 598, 601 (9th Cir. 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

The Court declines to dismiss the indictments pursuant to its supervisory powers. The Court finds that defendant fails to show that dismissal is necessary to remedy a statutory violation, which he has not alleged, or a constitutional violation, because defendant does not point to any evidence in the record to indicate that the government's conduct was "so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. King, 200 F.3d 1207, 1213 (9th Cir. 1999). Given that defendant had the opportunity to pursue his claims of evidence mishandling and of evidence tampering, including submitting the evidence of a weight discrepancy of Exhibit 28 contained in the DEA Report, the Court finds that dismissal is not necessary to protect the integrity of the judicial process. A reasonable juror could find that the drug evidence submitted at trial, including Exhibit 28, was in "substantially the same condition" as when it was seized from defendant, and defendant does not point to any new evidence in the instant motions to indicate that the conviction, under count five, rests on inappropriate considerations before the jury. Lastly, this Court concludes that dismissal is not necessary to deter future illegal conduct because despite defendant's speculative allegations that the government added crack cocaine to Exhibit 28, there is no evidence to find that the government's actions were illegal.

## IV.   CONCLUSION

In accordance with the foregoing, the Court hereby DENIES defendant's motion to dismiss the indictments.

IT IS SO ORDERED.

|  | 00 | : | 48 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |

cc: U.S. Probation